Good morning, everyone. We have six arguments on today's calendar. The court will take a brief five-minute recess after the second argument before we proceed. We'll begin with Appeal No. 222835, Barbara Tully v. Paul Okeson and others. Mr. Glickstein, good morning. Good morning, Your Honor, and may it please the Court. Our claim in this case flows from the plain language of the Constitution's voting amendments. Indeed, if Indiana had used race or sex in its mail-in voting laws, there would be little question how to resolve the claim in this case. A law that gave men, but not women, the right to vote by mail would be unconstitutional. That law would be unconstitutional even if women could vote in person or if women could vote by mail if they met other criteria. We often think about discrimination in terms of the 14th Amendment, and so it may be natural to feel that this analogy breaks down because age, unlike race or sex, is not a suspect classification for purposes of 14th Amendment doctrine. But when it comes to voting, the Constitution answers this question explicitly. It puts age on par with categories like race and sex for purposes of voting. And so 14th Amendment categories and 14th Amendment doctrine simply does not apply. The text, history, and structure of the 26th Amendment make this clear. Let me begin with the text. The 26th Amendment is phrased using exactly the same language as the 15th, 19th, and 24th Amendments. And the Supreme Court recognized in the Rice v. Caetano decision that this language is broad and unequivocal and that it goes beyond the controversy that motivated its enactment. Lower courts have also recognized the same thing in cases like the Davis case from the Ninth Circuit we cite in our briefing. Second, let me say a brief word about history. The framers of the 26th Amendment looked to the earlier voting amendments and to the Voting Rights Act for guidance when they framed the 26th Amendment. That's obvious from the amendment's text, but it's also reflected in the floor debates and the legislative history materials that we quote in our brief. And finally, let me say a brief word about constitutional structure. The voting amendments express negative restrictions on what would otherwise be broad rights granted to states and the federal government to regulate elections. And so when courts have talked about the broad power that states have to regulate elections in the 14th Amendment context, they have always recognized that that power is subject to the express limits elsewhere in the Constitution. The text, history, and structure of the amendments show that the 26th Amendment secures a freedom from discrimination in all state voting procedures on account of age, or in the words of the Lane decision by the Supreme Court, all matters affecting the franchise. Now, we admit or acknowledge certainly that this is not the first time that this court has addressed this question. When this case was last before the court in the appeal from the denial of our preliminary injunction motion in the fall of 2020, the court held that plaintiffs were unlikely to succeed on the merits of the 26th Amendment claim. The court's rationale was that absentee voting did not appear to be part of the right to vote that was protected by the 26th Amendment. But with all due respect, that is simply not a tenable reading of the 26th Amendment's plain text. And the panel did not grapple with many of the significant issues that we raise in our briefing. The basis for the panel's decision that the preliminary injunctions— Mr. Glickstein, if I—I mean, I think the discussion of the merits of the 26th Amendment are really interesting, and they're very interesting issues that that whole area raises. But, you know, as someone new to the case that wasn't here on the prior panel, aren't we just bound to follow what we previously did in Tully under the law of the case doctrine? Doesn't that circumscribe our ability to reexamine these issues that you now ask us to reexamine? No, Your Honor. So the law of the case doctrine, as we explained in our briefing, doesn't apply, and even if it applied, the court would not be bound to follow the prior ruling. So let me address those points separately. Why does the law of the case doctrine not apply? The law of the case would apply if the court in the P.I. determination made an unequivocal legal ruling on the merits, but that's not respectfully what the panel did. But it made an unequivocal legal ruling, yes? I think the basis of the preliminary injunction decision and the text of that decision was that plaintiffs were unlikely to succeed on the merits of the claim, that they had not made a strong showing because the panel's interpretation of McDonald suggested that the right to vote absentee by mail fell outside the right to vote. No, I understand that the panel decided that the plaintiffs did not have a likely chance of success on the merits, but the predicate of that, wasn't it a legal determination as to what the right to vote meant under McDonald and whatnot? Well, I think the predicate was that in light of the panel's interpretation and extension of McDonald to this different context, we were not likely to succeed on the merits of the claim, but there was no express holding of the sort that this court has made in earlier instances where there was law of the case effect given to P.I. decisions. The Pitt News decision from the Third Circuit, which was authored by then Judge Alito in 2004, I think is essentially squarely on point. That case, like this one, involved a constitutional challenge where the plaintiffs sought a preliminary injunction that was appealed to the Third Circuit, which affirmed the denial of the preliminary injunction, finding that the plaintiffs were not likely to succeed because of certain legal interpretations. The case then went back to the district court where the district court entered summary judgment for the defendants, exactly as in this case, and then it returned to the Third Circuit and Judge Alito explained that because there wasn't an express holding, if the panel stopped at the likelihood of success element, the subsequent panel certainly was required to give due respect to the panel's opinion as we would also, I mean, we give it due respect, but was not bound by it and could actually reassess the position on the merits. And in fact, the Third Circuit actually reversed the district court's entry of summary judgment in that situation. Mr. Glickstein, one of the other considerations, at least in my mind, I think you make this point in your brief, is the Purcell overlay as well. The preliminary injunction came to us at a time where voting was underway, at least pre-poll voting in Indiana. And Purcell is mentioned as a consideration in the Tully 1 panel opinion. So I think that's one thing that differentiates this perhaps from a case where, as Judge Lee is suggesting with his questions, you have in the preliminary injunction context setting some, what you fairly look at as a legal ruling that way. And you'd say, well, why is the legal ruling going to change just with the passage of time? The additional variable you have here going on is you have an ongoing election at the time of Tully 1. Yeah, and I would agree wholeheartedly with that, Your Honor. And I would go to the second issue that I was alluding to earlier, which is even if the law of the case doctrine applied, I think that there would be reasons why the panel, with the passage of time and the ability to consider this on a more fully briefed record and, in addition, without the overlay of the Purcell doctrine, is perfectly entitled and ought to revisit that constitutional question. Let me get, you make some points that I think are fair about McDonald in your brief. But let me ask you this question. Is McDonald, in your view, 100% irrelevant to the question presented here? If you had to write the opinion, would you ever mention McDonald? I think that McDonald is irrelevant, irrelevant, Your Honor. To the extent it's relevant, it should not be the starting point of the analysis. Okay, to what extent is it relevant as a legal matter in your view? I know you're saying it's the 14th Amendment. It's not the 15th. It's standard review. I get all that. If it's relevant, how is it relevant? Well, I don't think it's relevant because I think it's an interpretation of an unenumerated right to vote within the context of a general equal protection guarantee in the 14th Amendment. I'd actually commend to the Court, there's a law review article by Professor Vikram Amar that came out in the Notre Dame Law Review, which is cited in our reply brief. The 14th Amendment, as originally understood, it wasn't even clear that it applied to political rights like voting, either under the Privileges and Immunities Clause or the Equal Protection Clause. So there's obviously a significant amount of doctrine that has built up in the 14th Amendment context about the right to vote, but that's all in the context of this unenumerated right with highly general guarantees to equal protection. See, that answer surprises me a little bit. Here's what I thought you would say. I thought you would say, no, no, no, it's relevant. And it's relevant because of some of its dicta. And some of its dicta suggests that the analysis might altogether be different if it involved race. Because on the facts of McDonald, I mean, you know him as well or better than I do. He was the pretrial detainees in Illinois. But if the analysis, as the Court seemed to suggest, may be different on account of race, well, it would be different kind of ipso facto on the basis of sex or on the basis of age because of the 19th and 26th Amendments. And I agree with that, too. And I'm not trying to duck and weave here. No, no, no. Our first position is that McDonald is not relevant for all the reasons I talked about. Our fallback position would be that if it's relevant, the logic of the decision points in our favor in this case for the reason that Your Honor stated. And that's that McDonald recognized that a much more searching inquiry would need to be conducted under the 14th Amendment if there were restrictions on the basis of traditionally suspect categories within the 14th Amendment context. Age is not a traditionally suspect category. That's why I think it's sometimes counterintuitive to think about our claim in the context of age discrimination. But the 26th Amendment, as I said, takes that question off the table. So bottom line for you, what rule do you want us to announce? The court should hold that a state may not discriminate in the non-loaded sense of that term, may not differentiate between similarly situated voters on account of age in all matters related to voting. So what the Supreme Court has called time, place, and manner restrictions in the Brnovich decision. So would that mean then that any law that facially would discriminate on account of age, that you can look at it and just on its face or through the extension of a definition see that there's some line drawn on race, that it is necessarily either a denial or an abridgment of the right conferred in the 26th Amendment? I think there is a subsequent. So there's a question about what abridgment means and the party's joint issue on that. But as an initial matter, any voting-related law that classifies voters based expressly on age would fall under the ambit of the 26th Amendment, just as any voting-related law that classifies, distinguishes between voters expressly based on race under the 15th Amendment. Okay, but you'd say you've got to go further then and then ask a step two question about does that facially discriminatory statute then amount to an abridgment? That's correct, Your Honor. And I think that question is answered squarely by the Supreme Court's decision in the Supreme Court said for purposes of the constitutional text, denial or abridgment, abridgment is essentially an anti-discrimination principle. Are different voters differently, is it harder for certain voters to access the polls than others? And I think in the panel's decision, it actually, if I can find the text, I think the panel sort of acknowledged that and said that, this is at 977 F3rd 614, but in this case we too are reviewing an absentee voting statute that makes voting more available to some groups, namely voters over 65, and that is kind of the heart of the constitutional violation. A state cannot make voting more available to some groups on the basis of race, sex, age, or ability to pay a poll tax, and that's just in the plain text of the Constitution. So if a state law said, talking about Indiana here, so if Indiana passed a law tomorrow that said the polls are going to open an hour early for those over 65, they tend to be early risers, it's going to be more convenient, they may not have to wait in longer lines, you know, so an hour early, the polls will open at 5 a.m. instead of 6 or whatever. Abridgment? Yes, Your Honor. And I think the reason, the way to, I'm sorry, Your Honor. Answer the judge's question first. I think the way to see that is to think about a similar classification in terms of a category like race or sex. So I think, as I said earlier, it's sometimes counterintuitive to think about discrimination in this context because with age discrimination, there often can be rational reasons for a state distinguishing between different classes of people based on age. But the Constitution, the voting amendments, are not concerned with whether or not there's a rational reason to do something. They are explicit prohibitions on using that category. Suppose Indiana decided that every polling place was going to have a special line for those 65 and over. Just like, you know, a lot of countries have that for going through your security, your clearing to get on an airline. What do you think of that? I think that would also, it's not this case, obviously, but I think that would also be unconstitutional. I can understand why voting, election officials might think that's a rational thing to do or even a good idea to try to encourage voting, but the Constitution says, the plain text of the Constitution says that states... Suppose the statute said all handicapped persons. That would be perfectly appropriate and not a denial of, not a denial of enrichment of the right to vote on account of any other protected categories in the Constitution. So, to the extent that states do want to achieve these goals, which are correlated with age, the Constitution, I think, leaves state officials free to accomplish those ends as long as they don't use one of the impermissible classifications. So, if our hypotheticals aren't working, give me an example of a statute. If there is truly a two-step inquiry and step two is not an empty set, give me an example of a statute that would facially discriminate on the basis of age, so it would clear step one, but it would not be an abridgment. One example might be the, I'm now forgetting the acronym, but it's discussed in the defendant's brief and then we discuss it in our reply, but it's a congressional statute that tries to encourage participation by elderly and handicapped voters in a variety of ways. That, I think, is targeted at increasing participation by elderly voters, refers to elderly voters, but it doesn't do that in any way that makes it harder for voters who are of a particular age to vote. Your Honor looks confused, so I'm not sure if, I think I'm answering your question, but if not, please correct me. Okay. No, I mean, I get it. Yeah, I get it. Okay. So, you would say it looks on its face like it's discriminating on the basis of age, but  Right. And I think that's the Bossier Parish inquiry. Okay. I may have run over my time. We burned through your time, so we'll give you some rebuttal time. Thank you, Your Honor. All right, very well. Let's hear from the State. May it please the Court. This Court has already rejected Plaintiff's 26th Amendment theory holding that Indiana did not abridge their right to vote by letting the elderly vote by mail. That change made voting easier for the elderly, not harder for plaintiffs. As both this Court and the Fifth Circuit have recognized, the Constitution does not require states to indulge citizens' preference of voting from home when they have ample opportunities to vote in person. This Court should adhere to its earlier ruling as law of the case and affirm. I'll start with the law of the case before turning to the Court's questions regarding the right to vote and abridgement. On law of the case, the District Court correctly held that this Court's prior ruling is controlling. As both sides recognize, it's Hornbook law that a fully considered appellate ruling on a preliminary injunction issue becomes law of the case on a remand and any subsequent appeal. And that's what we have here. Should we apply that rule liberally in your view? I think it is a sound practice not to continually revisit earlier legal rulings that were unequivocal for precisely the reason this Court has pointed out, that litigation would be unduly prolonged because litigants could raise on every— So really, aren't you really arguing for a new form of interlocutory appeal effect? I mean, Congress has been very clear. It doesn't want interlocutory appeals unless it tells us. But you're really arguing that we should turn our preliminary injunction jurisprudence into an interlocutory appeal? No, Your Honor. I think there is a distinction between sort of rules about when you can appeal and what gets decided in that appeal. And I don't think any of these courts of appeals to have addressed this issue have found any issue with holding that in the right circumstances. Preliminary injunctions rulings can be law of the case. And I think to answer one of the questions earlier about was this really an unequivocal ruling? Do you think there should be a different rule in a constitutional case as opposed to a statutory or common law case in applying this law of the case doctrine? Not at all, Your Honor. I think that it's a one rule for when there is a legal ruling. If there is a factual ruling, I certainly concede if the facts change that the panel could revisit it anew. The difficulty I have with that view is that one of the real strengths perhaps in our system is this so-called percolation theory. A court can have to deal with a case on a preliminary injunction, but very early in the nation's process of considering the situation. And other circuits can later, with a little bit more time, the wisdom of the earlier courts can take another look at it. Why can't the court that ruled on the preliminary injunction down the line say, yeah, after seeing what other circuits have done, seeing what the academic bar has done in its writings, seeing what other district judges have done with similar factual circumstances, take a more considered view of this matter. Isn't the system set up to do that? Certainly there is some flexibility in the law of the case doctrine, but the courts applying it have made clear that there is a high bar, nonetheless, to revisit a previously decided issue. There needs to be clear or manifest error, and that's not what we have here. As the district court observed . . . Clear or manifest error? Correct. In the preliminary injunction ruling? In the preliminary injunction ruling. So we're going to be rather deferential to that preliminary injunction panel. Is that right? I think it goes beyond deference, Your Honor. The law of the case is a rule that the court should not revisit. Certainly there is some flexibility. Circumstances have so drastically changed, or the law has so drastically changed, that it makes sense to revisit it. But this is not one of those situations. The plaintiffs have not pointed to any intervening change of the law. Rather, they are largely presenting the same arguments that were presented to this court earlier. What I worry about is . . . I don't know if it's a different strand of Judge Ripple's worry or not, but I worry that what you're doing with your argument is you're stripping the context away from the prior ruling. And the context was . . . there's no question it was a preliminary injunction appeal, but voting was underway in the state. And what we have to do is handicap the likelihood of success, and we write an opinion that may be a little bit more over-weighted legally and under-weighted on Purcell. But it's pretty clear from the face of that opinion and from the courtroom at the time that the Purcell considerations were very much weighing upon the panel. Yes, Your Honor. To speak to that, I think from my reading of the opinion, it seems like the Purcell considerations were most relevant to the 14th Amendment claim because that's the specific And I think in at least how this Court has read it in Common Cause, they viewed this Court's earlier opinion as being decided on the merits . . . I don't think we would have been willing to stop the voting in Indiana under one provision of the Constitution but allow it to go forward under another. I don't . . . I mean . . . I think that certainly, Your Honor, the principle would apply equally to both, but at least to me, the panel seems to have been rather unequivocal that this . . . the 26th Amendment claim hinged on one question, and the panel said McDonald answered it. Turning to the merits and the Court's questions on that, to state a 26th Amendment claim, there needs to be three showings. First, that the challenge law operates on account of age. Second, that it impacts the right to vote. And third, that it impacts it by abridging that right. So, this case is really focused on those latter two considerations. On the right to vote, let me be clear at the outset that this is not a case where plaintiffs have said that Indiana law prohibits them from voting. This November, all can vote in person or during early voting. Plaintiffs, merely as they put it in their summary judgment papers, would, quote, prefer to vote by mail. And as this Court observed earlier, McDonald establishes that the Constitution doesn't protect preference. Turning to the . . . the Court raised two questions regarding McDonald. The first is, what is its role, given that it was in the 14th Amendment context? Whether or not this Court wants to treat McDonald as binding, as sort of a precedential matter in that context, it's still the case that it provides weighty, contemporaneous evidence of the meaning of right to vote. As the Fifth Circuit put it, a definitive meaning of the right to vote could hardly have been given any closer to the time of the 26th Amendment's ratification. And the Supreme Court consistently adhered to the distinction McDonald drew between voting preferences and impacts on the rights to vote in multiple times in the 1960s and 70s. The second question that was raised regarding McDonald was that, well, it didn't involve the suspect classification. And I think the reason it didn't involve that classification is there was no impact on the right to vote. At page 807 of the opinion, the Court recognized that it would apply more exacting scrutiny if the challenge statute threatened to invade or restrain the right to vote. But the Court said it didn't need to go there because the right to vote simply wasn't at stake. And I think footnote 7 of the opinion reinforces that because there the Court recognized that any statute having a disparate impact on wealth would also involve a suspect classification. And the plaintiffs in McDonald had challenged the Illinois law as operating to the disadvantage of wealthy people. Mr. Barty, do you believe that the same analytical approach should apply under all three of the It's only a 26th Amendment case, but 15th, 19th, 26th. Should a court apply the same exact analytical approach because of the structure and the way they're worded? I think the Court can get a lot of guidance from decisions interpreting the earlier voting rights amendments. I think there needs to be a little bit of caution in importing those wholesale in part because some of the earlier decisions regarding the 15th Amendment, say, were in a much looser analytical framework than usually courts take to constitutional questions today. There wasn't always the same rigorous analysis of text in history. And likewise, and I think the other... I don't understand that. So I think... You're saying we're in a whole new age, right? Is that what you're saying? No, Your Honor. Everything before 2017, right? No, Your Honor. No, that's what you're saying, right? No, Your Honor. You said those old guys didn't know what they were doing when they interpreted the Constitution. That's what you're saying, right? No, Your Honor. I think... I'm just saying the Court should, as with any constitutional provision, critically approach the prior precedents and make sure that they are indeed consistent of the text whenever they're asked to import them to a new context. And that's all I'm asking the Court to do. Lawyers used before us, and this is why I bring it up. Lawyers used before us very often. It's an old case, Your Honor. That has been a telegraph. It was decided before 1980, in the presidential election of 1980. And it's nasty. What you just did was suggest to us, those old guys, they had a different way of interpreting the Constitution. Forget all about that. No, Your Honor. I don't think at all we should forget about it. It's merely a matter of whenever... Making sure that it is indeed consistent with the text. So to turn to the... I think one of the main issues that has been raised between the interplay of those cases interpreting the 15th Amendment and the 26th is on the concept of abridgment. The plaintiffs have argued for a concept of abridgment that is a no distinction rule. There can be no distinctions made. But that is, I think, has four different problems. The first is text, precedent, history, and their own concessions. Starting with the text. Abridge means to shorten or to curtail. It doesn't mean no distinctions. And the... But, Mr. Barta, it also certainly doesn't mean that, I think, in Abbott, the Fifth Circuit, at least the majority decision, interpreted that to mean that someone's right has to be kind of curtailed, right? There should be less of a right in the status quo. But that doesn't, to me, seem like the right historical framework to interpret abridgment since when the amendment was enacted, there were certain states that hadn't complied, right? And so it's a prospective. I think the Supreme Court case in Reno talks about this. It's a prospective look at what the right should be and can be rather than just looking at the status quo and saying everything's okay now. Let's see if someone's right has been curtailed. Do you agree with that? I think it's yes. I think it's both, Your Honor. When you have a change, as you have here, it can be instructive to look at what was the state prior to the change. And no one's contested there's any abridgment under that theory because the change, extending mail-in voting to the elderly, made it easier for them, not harder for plaintiffs. But to get to Your Honor's point about the Reno case is I think even the Fifth Circuit recognized that if someone is saying we don't have full enjoyment of the right to vote, it is imperative to step back and ask what would full enjoyment of that right look like. And I think history is very instructive there because historically, throughout history, people were considered to be in full possession of the right to vote as long as they could vote in person on election day. That was the norm. And so I think it would be very difficult to say there has been an abridgment of that right. Does that same analysis, if you just change the hypothetical and you take it into a 19th or 15th Amendment context, you reach the exact same conclusion? I think so. And I think that's where the older cases interpreting the 15th Amendment and 19th Amendment are very instructive. They describe abridgment as real burdens to voting. They use phrases like indirectly deny, effectively handicap, manipulate out of existence. Those all suggest a really strong barrier to voting by any means, not simply a law that doesn't indulge someone's preferred method of voting. And I think the plaintiffs effectively have conceded that at various points in their argument. The federal statute that was mentioned earlier that requires states to make special accommodations for the elderly, plaintiffs say that is perfectly consistent with the 26th Amendment. And in the prior appeal, they also conceded that state laws allowing elderly voters to the front of the line were consistent. That approach I don't think could be reconciled with their no distinction rule. What Indiana has done is exactly what Congress has said states may do, consistent with the Voting Rights Amendment, which is make alternative arrangements for elderly voters to ensure that they are placed on the same plane or the same level as other voters. Mr. Porter, can I ask you one thing? I know you're running low on time. Can we envision a framework where we stay somewhat consistent with the holding in McDonald's and say the right to vote is the right to cast a franchise in whatever manner and say that in the 26th Amendment context, when we look at the means that a person could use to cast a vote, that the term abridgment does the work? In other words, that type of analysis seems to me perfectly consistent with McDonald and the text of the 26th Amendment. I'd like your reaction to that. I think that's a perfectly permissible way to analyze it. I think that's actually very much what the Fifth Circuit did, where it said we read McDonald as saying the core of the right to vote is— I'm not sure I agree, but go ahead. The ability to cast a ballot and say, well, was there an abridgment? Was there a shortening or curtailing? And when you have a law that just deals with preferred voting methods, that doesn't curtail or abridge that right. And it would be a very different case if the plaintiffs had alleged they just couldn't vote by any method, for some reason they just couldn't make it to the polls. That could be a different case. But for the purposes of this case, all this court needs to address is there's no impact on the right to cast a ballot. Mr. Barber, can I get one final question in for you? It seems implicit in our dialogue—correct me if I'm wrong— that the state agrees that the 26th Amendment did something more than lower the voting age from 21 to 18. Yes, Your Honor. I think that was the principal effect, but the language does sweep broader. That it does contain—I mean, we can argue about the content, as we are here, but it does contain an anti-discrimination mandate in the form of the language deny or abridge. I don't know if I would describe it as anti-discrimination because I think discrimination can often be used to mean no distinction, but it does definitely contain an anti-abridgment mandate. Fair enough. Okay. Very well. Thank you. Thank you. Okay. Mr. Glickstein, we'll give you a few minutes on rebuttal here. Thank you, Your Honor. I appreciate the courtesy. I'd just like to make a few brief points. The first is that the fact that plaintiffs can vote in person is immaterial to our claim in this case. This is not a case about denial of the right to vote. The 26th Amendment separately prohibits abridgment of the right to vote, and that is the source of the plaintiff's claim. The second point I want to make is about footnote 7 of the McDonald decision, which my friend Mr. Barta referenced in his argument. And if you look at footnote 7, that reinforces the distinction I just drew. This is now quoting from the opinion. Appellants claim, secondly, that to the extent they cannot afford the posted bail, they're being denied their right to vote solely because of their indigency. Since there's nothing in the record to show that appellants are, in fact, absolutely prohibited from voting by the state, we need not reach these two contentions. So McDonald was a case about denial of the right to vote, not abridgment of the right to vote, and that's another reason why the logic of the case doesn't apply. One other point that I don't think has been touched on. For that matter, it wasn't even clear. I mean, McDonald footnote 6 was suggesting it's possible they're going to set up a polling place at the jail. Correct. And McDonald has decided on a summary judgment. It was really a case about sort of evidence in the record. It was not, I think, an ultimate ruling on the legal definition of the right to vote. One thing that did not get significant attention in my argument and Mr. Barta's argument is the role of the Voting Rights Act, which I think is a kind of quasi-constitutional statute enacted under the 15th Amendment enforcement power, which is, I think, a critical lens through which to evaluate this question as well. So, you know, McDonald decided two years before the amendment no evidence in the text or the history of the 26th Amendment that Congress was even thinking about McDonald, let alone adopting McDonald's decision. What there is evidence of, however, is that Congress was looking to the Voting Rights Act using the same definition of voting as is used in the Voting Rights Act and receives a very broad definition in the Voting Rights Act, in which everyone agrees, including most recently the Supreme Court and the Bernabas decision covers absentee voting, as well as other policies and procedures that affect voting. So I think that's just another piece of the puzzle and, frankly, more relevant to this question than the McDonald decision. Mr. Quickstein, does it matter, does it make a difference whether or not a state makes it easier for elderly people to vote versus making it harder for non-elderly people to vote for the purposes of the 26th Amendment analysis in your mind? No, no. That's what courts would call a retrogression analysis. Is the disadvantaged group worse off than they were before? And that's what the Fifth Circuit did in Abbott, right? That is what the Fifth Circuit applied in Abbott, and that is the test that applies under Section 5 of the Voting Rights Act, but it is not the test that applies under the Constitution, and that's what the Reno v. Bossier Parish case squarely holds. It's also what this court held in the Luft decision, which was a decision in 2020 arising out of Wisconsin. Let me ask you, in keeping with that line of questioning and thinking, do you think that it's a proper inquiry to ask, after the 1993 amendment to Indiana law here, that the proper inquiry is to look at the totality of the circumstances available to those under 65 to exercise the franchise? And so you would look to, of course, the polling places are open, but then you look at the statutory, I think what they call them, excuses or exceptions, look at them, and then sizing all of that up, ask whether the plaintiff's right has been abridged. It's not a denial case. I get that. Is that a proper inquiry or is that improper? I think that is improper, Your Honor, because that is the type of inquiry that a court would conduct under the effects prong of Section 2 of the Voting Rights Act. That's what Brnovich was talking about. That's what this court was talking about in Luft. This is not an effects case. This is a case based on the plain text of the statute. So if you look at the distinction between a disparate effect, disparate impact case, and a facially invalid, facially discriminatory. I think that's right, Your Honor. So if our contention were that there were a facially neutral statute, not framed in terms of age, but that had the effect of discriminating or had a disparate impact on voters based on age for some reason, then it might be appropriate to conduct that kind of holistic inquiry. But I don't think you would even get there because the text of the statute tells you all you need to know. Okay, very well. Thanks to both counsel. Very much appreciate it. We'll take the case under submission.